**NIDA & ROMYN, P.C.**
Robert Nida
1900 Avenue of the Stars, Suite 650
Los Angeles, California 90067
Telephone: (310) 286-3400
E-Mail: rnida@nidaromyn.com

**PEPPER HAMILTON LLP**
Ira M. Schulman
Emily D. Anderson
620 Eighth Avenue, 37th Floor
New York, New York 10018-1405
Telephone: (212) 808-2718
E-Mail: schulmani@pepperlaw.com; andersone@pepperlaw.com

*Counsel for Tutor Perini Building Corp.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TUTOR PERINI BUILDING CORP., individually and, as to Count I of the Complaint, on behalf of all others similarly situated, pursuant to Article 3-A of the N.Y. Lien Law, <br><br> Plaintiff, <br><br> vs. <br><br> NEW YORK CITY REGIONAL CENTER, LLC; GEORGE WASHINGTON BRIDGE BUS STATION AND INFRASTRUCTURE DEVELOPMENT FUND, LLC; GSNMF SUB-CDE 12 LLC; GSB NMTC INVESTOR LLC; LIIF SUB-CDE XXVI, LLC; DVCI CDE XIII, LLC; GWB NMTC INVESTMENT FUND LLC; GWB LEVERAGE LENDER, LLC; GEORGE WASHINGTON BRIDGE BUS STATION AND INFRASTRUCTURE DEVELOPMENT FUND, PHASE II, LLC; UPPER MANHATTAN EMPOWERMENT ZONE DEVELOPMENT CORPORATION; SLAYTON VENTURES, LLC; SLAYTON EQUITIES; SJM PARTNERS INC.; PAUL SLAYTON, an individual, STEPHEN GARCHIK, an individual; WILLIAM "TREY" BURKE, an individual, STEPHEN McBRIDE, an individual; and DOES 1-300, inclusive, <br><br> Defendants. | Case No. 1:20-cv-00731-PAE <br><br><br><br><br> *Plaintiff Demands Trial By Jury* |

## AMENDED COMPLAINT

Tutor Perini Building Corp. ("TPBC" or "Plaintiff"), by and through its undersigned counsel, based upon knowledge, information, belief, and its investigation to date, files this Complaint against (1) New York City Regional Center, LLC; George Washington Bridge Bus Station And Infrastructure Development Fund, LLC; GSNMF Sub-Cde 12 LLC; GSB NMTC Investor LLC; LIIF SUB-CDE XXVI, LLC; DVCI CDE XIII, LLC; GWB NMTC Investment Fund LLC; GWB Leverage Lender, LLC; George Washington Bridge Bus Station And Infrastructure Development Fund, Phase II, LLC; Upper Manhattan Empowerment Zone Development Corporation; ("Lender Defendants"); (2) the Complaint is also brought against Slayton Ventures, LLC; Slayton Equities; SJM Partners Inc.; Paul Slayton, an individual; Stephen Garchik, an individual; William "Trey" Burke, an individual; Stephen McBride, an individual ("Individual Owners and Related Developer"); and (3) the Complaint is brought against Does 1-300, inclusive (collectively, the "Defendants"). Plaintiff, based on knowledge, information and belief, and, as a result of its investigation to date, alleges as follows:

## I.
## NATURE OF ACTION

1.      This Complaint asserts claims held by TPBC, in its individual capacity, arising from the George Washington Bridge Bus Station development project, a major construction project in New York, New York. This Complaint asserts causes of action due to massive and coordinated fraudulent misconduct that resulted from the wrongful receipt of monies, which said funds were absconded, stolen and/or otherwise diverted from statutory trust funds. The individual defendants and their companies in particular engaged in conduct that shocks any notion of lawful, ethic of reasonable business practice.

## II.
## JURISDICTION, VENUE AND STATUTORY PREDICATES

2.    The jurisdiction of this Court is based both upon diversity of citizenship and a federal question.

3.    The jurisdiction of this Court is based upon diversity of citizenship, pursuant to 28 U.S.C. § 1332(a).  The parties are citizens of different states and the amount in controversy exceeds $75,000.

4.    Further and independently, this Court has jurisdiction because TPBC asserts claims arising under the federal Declaratory Judgment Act.

5.    Venue is proper and personal jurisdiction exists because a substantial part of the events giving rise to the Complaint occurred in this District and at least two of the Defendants, New York City Regional Center, LLC and Slayton Ventures, LLC, reside and are headquartered within this District.  28 U.S.C.  § 1391(b)-(c).

6.    This case is commenced pursuant to Article 3A of the N.Y. Lien Law (the "Lien Law"), federal Declaratory Judgment Act and the causes of action asserted herein.

## III.
## PARTIES

7.    Plaintiff Tutor Perini Building Corp. is an Arizona corporation, headquartered in California, with a license to operate as a general contractor in New York.

8.    TPBC is informed and believes and thereon alleges that Defendant New York City Regional Center, LLC ("NYCRC") is, and at all times herein mentioned was, a limited liability company duly formed, existing, and organized under the laws of the State of New York. Defendant NYCRC and its managing members are not residents of Arizona or California.  The

managing members of NYCRC are Paul Anton Levinshon and George Olsen, each of whom are residents of the State of New York.

9.      TPBC is informed and believes and thereon alleges that <u>Defendant George Washington Bridge Bus Station and Infrastructure Development Fund, LLC</u> is, and at all times herein mentioned was, a limited liability company duly formed, existing, and organized under the laws of the State of New York.  Defendant George Washington Bridge Bus Station and Infrastructure Development Fund, LLC and its managing members are not incorporated or headquartered in Arizona or California.  NYCRC is the managing member of Defendant George Washington Bridge Bus Station and Infrastructure Development Fund, LLC.  NYCRC is a limited liability company duly formed, existing, and organized under the laws of the State of New York and headquartered in the State of New York.

10.     TPBC is informed and believes and thereon alleges that <u>Defendant GSNMF SUB-CDE 12 LLC</u> is, and at all times herein mentioned was, a limited liability company duly formed, existing, and organized under the laws of the State of Delaware. Defendant GSNMF SUB-CDE 12 LLC and its managing member are not incorporated or headquartered in Arizona or California.  GS New Markets Fund, LLC is the managing member of Defendant GSNMF SUB-CDE 12 LLC.  GS New Markets Fund, LLC is a limited liability company and duly formed, existing, and organized under the laws of the State of Delaware.  On information and belief, GS New Markets Fund, LLC is headquartered in the State of New York.

11.     TPBC is informed and believes and thereon alleges that <u>Defendant GSB NMTC Investor Fund LLC</u> is, and at all times herein mentioned was, a limited liability company duly formed, existing, and organized under the laws of the State of Delaware. Defendant GSB NMTC Investment Fund LLC and its managing member are not incorporated or headquartered in

Arizona or California.  GSB NMTC Investor LLC is the managing member of Defendant GSB NMTC Investor LLC.  GSB NMTC Investor LLC is a limited liability company and duly formed, existing, and organized under the laws of the State of Delaware.  On information and belief, GSB NMTC Investor LLC is headquartered in the State of New York.

12.    TPBC is informed and believes and thereon alleges that Defendant LIIF SUB-CDE XXVI, LLC is, and at all times herein mentioned was, a limited liability company duly formed, existing, and organized under the laws of the State of Delaware. Defendant LIIF SUB-CDE XXVI, LLC and its managing member are not incorporated or headquartered in Arizona or California.  GWB NMTC Investment Fund, LLC is the nearly one hundred percent (100%) member and owner of LIIF SUB-CDE XXVI, LLC.  GWB NMTC Investment Fund, LLC is a limited liability company and duly formed, existing, and organized under the laws of the State of Delaware.  On information and belief, GSB NMTC Investment Fund LLC is headquartered in the State of New York.

13.    TPBC  is informed and believes and thereon alleges that Defendant DVCI CDE XIII, LLC is, and at all times herein mentioned was, a limited liability company duly formed, existing, and organized under the laws of the State of Delaware.  Defendant DVCI CDE XIII, LLC and its managing member are not incorporated or headquartered in Arizona or California. DV Community Investment Fund is the managing member of Defendant DVCI CDE XIII, LLC. DV Community Investment Fund is a limited liability company and duly formed, existing, and organized under the laws of the State of Delaware.  On information and belief, DV Community Investment Fund is headquartered in the State of New York.

14.    TPBC  is informed and believes and thereon alleges that Defendant GWB NMTC Investment Fund LLC is, and at all times herein mentioned was, a limited liability company duly

formed, existing, and organized under the laws of the State of Delaware. Defendant GWB NMTC Investment Fund LLC and it managing member are not incorporated or headquartered in Arizona or California. GSB NMTC Investor LLC is the managing member of Defendant GWB NMTC Investment Fund LLC. GSB NMTC Investor LLC is a limited liability company and duly formed, existing, and organized under the laws of the State of Delaware. On information and belief, GSB NMTC Investor LLC is headquartered in the State of New York.

15. TPBC is informed and believes and thereon alleges that Defendant GWB Leverage Lender, LLC is, and at all times herein mentioned was, a limited liability company duly formed, existing, and organized under the laws of the State of Delaware. Defendant GWB Leverage Lender, LLC and its managing members are not incorporated or headquartered in Arizona or California. GWB Development Partners, LLC is the managing member of Defendant GWB Leverage Lender, LLC. George Washington Bridge Bus Station and Infrastructure Development Fund, Phase II, LLC is the "loan member" of GWB Leverage Lender, LLC. GWB Development Partners, LLC is a limited liability company and duly formed, existing, and organized under the laws of the State of Delaware. George Washington Bridge Bus Station and Infrastructure Development Fund, Phase II, LLC is a limited liability company and duly formed, existing, and organized under the laws of the State of New York. On information and belief, GWB Development Partners, LLC and George Washington Bridge Bus Station and Infrastructure Development Fund, Phase II, LLC are each headquartered in the State of New York.

16. TPBC is informed and believes and thereon alleges that Defendant George Washington Bridge Bus Station and Infrastructure Development Fund, Phase II, LLC is, and at all times herein mentioned was, a limited liability company duly formed, existing, and organized

under the laws of the State of New York.  Defendant George Washington Bridge Bus Station and Infrastructure Development Fund, Phase II, LLC and its managing members are not incorporated or headquartered in Arizona or California.  NYCRC is the managing member of Defendant George Washington Bridge Bus Station and Infrastructure Development Fund, Phase II, LLC. NYCRC is a limited liability company duly formed, existing, and organized under the laws of the State of New York and headquartered in the State of New York.

17.    TPBC is informed and believes and thereon alleges that <u>Defendant Upper Manhattan Empowerment Zone Development Corporation</u> is, and at all times herein mentioned was, a corporation duly formed, existing, and organized under the laws of the State of New York.

18.    TPBC is informed and believes and thereon alleges that <u>Defendant Slayton Ventures, LLC</u> is, and at all times herein mentioned was, a limited liability company duly formed, existing, and organized under the laws of the State of New York.  Defendant Slayton Ventures LLC and its members are not incorporated or headquartered in Arizona or California.

19.    TPBC is informed and believes and thereon alleges that <u>Defendant Slayton Equities,</u> New York is, and at all times herein mentioned was, a unknown entity, but believed to exist in New York.  Based on information and belief, Defendant Slayton Equities and its members are not incorporated or headquartered in Arizona or California.

20.    TPBC is informed and believes and thereon alleges that <u>Defendant SJM Partners Inc.</u> is, and at all times herein mentioned was, a corporation duly formed, existing, and organized under the laws of the State of Florida, and is not incorporated or headquartered in Arizona or California.

21.    TPBC is informed and believes and thereon alleges that <u>Defendant Paul Slayton</u> is, and at all times herein mentioned was, and individual and the head of, agent and employee of

Defendant Slayton Ventures, LLC, and was acting within the scope of such agency and employment, and engaged in other activities related to the allegations set forth in this Complaint. Upon information and Paul Slayton belief, Defendant Paul Slayton is a resident of the State of New York, but not a resident of Arizona or California.

22.    TPBC is informed and believes and thereon alleges that <u>Defendant Stephen Garchik</u> is, and at all times herein mentioned was, the President, agent and employee of Defendant SJM Partners Inc., and was acting within the scope of such agency and employment, and engaged in other activities related to the allegations set forth in this Complaint. Upon information and belief, Defendant Stephen Garchik is a resident of the State of Florida or Virginia, but not a resident of Arizona or California.

23.    TPBC is informed and believes and thereon alleges that <u>Defendant William "Trey" Burke</u> is, and at all times herein mentioned was, an individual and associated as the "Development, Senior Vice President" with SJM Partners Inc. Upon information and belief, Defendant Mr. Burke is a resident of the State of Virginia, and not a resident of in Arizona or California.

24.    TPBC is informed and believes and thereon alleges that Defendant Stephen McBride is, and at all times herein mentioned was, the "Development, Managing Principal" of SJM Partners Inc., and was acting within the scope of such agency and employment. Upon information and belief, Defendant Stephen McBride is a resident of the State of Virginia and not a resident of in Arizona or California.

25.    The identities of each fictitiously named Doe defendants are unknown to Plaintiff. Plaintiff is informed and believes, and upon such information and belief thereon alleges, that each Doe defendant is in some manner legally responsible for the damages hereinafter pled.

Plaintiff will seek leave to amend this Complaint once the true and correct identities of these Doe defendants are ascertained. The above-named defendants and DOES 1 through 300, inclusive, are collectively referred to herein as "Defendants."

## IV.
## FACTUAL BACKGROUND

**A.**    **The Project**

26.    TPBC and its affiliates are a leading civil and building construction firm offering diversified general contracting and engineering services to private clients and public agencies throughout the world.  TPBC has provided construction services since 1894 and has executed large complex projects throughout the United States.  TPBC has built some of the most complex and high-profile projects in New York and throughout the country, including major sports facilities, hotels, health care centers, transportation systems, residential and retail facilities.

27.    The George Washington Bridge Bus Station, which first opened on January 17, 1963, acts as a transit facility operated by the Port Authority of New York and New Jersey (the "Port Authority").  The station is built over the Trans-Manhattan Expressway (Interstate 95) on property owned in fee by the Port Authority on between 178th and 179th Streets and Fort Washington and Wadsworth Avenues (designated on the tax map of the City of New York as Block 2163 Lot 1 and Block 2176 Lot 17) (the "Property").

28.    On June 30, 2011, the Port Authority approved a $183.2 million renovation and improvement plan for the George Washington Bridge Bus Station (the "Project"), which is located on the Property.  The Project was a public private venture between the Port Authority, as owner of the Property, and non-party George Washington Bridge Development Venture LLC (the "Developer"), as ground lessee and developer/contractor. The Project included relocating

the bus terminals to the third floor of the complex and creating a state-of-the-art ground transportation hub. The Project also entailed a new 15,000 square foot bus terminal that increased the number of gates from 17 to 22. Additionally, 85,000 square feet of the existing bus station was reconfigured and upgraded. By relocating the bus station terminal to the third floor of the complex, a retail center of approximately 129,000 square feet was created.

29.     Upon information and belief and representations of agents of the Developer, the members of the Developer are GWB Development Partners, LLC and Marketplace GWB, LLC. Defendants Stephen Garchik, Stephen McBride and Paul Slayton (the "Individual Owners") are indirect owners of the Developer, given the multi-layered ownership structure of the Developer. One or all of the Individual Owners also own and operate Defendants Slayton Ventures, LLC, Slayton Equities, SJM Partners Inc. (the "Related Developer Entities") Upon information and belief, Defendant William "Trey" Burke is an employee and principal agent of the Developer (hereinafter referred to with the "Individual Owners" as "Individual Owners"). Upon information and belief, Individual Owners are officers of the Developer or the companies that control the Developer. The structure, ownership and control of the Developer may have changed from time-to-time throughout the project.

30.     On or about July 21, 2011, the Port Authority entered into a written contractual lease agreement with the Developer (the "Ground Lease") allowing the Developer to use and operate portions of the Project as retail space for a period of 49 years with 5 ten year extension options (for a total leasehold term of 99 years) (the "Leased Areas") while reserving the remainder of the space for the use and operation by the Port Authority for a bus terminal (the "Reserved Spaces") and obligating the Developer to construct and renovate both the Leased

Areas for its own use and the Reserved Spaces for use by the Port Authority, in part using funds paid by the Port Authority.

31.    In connection with the construction, on June 25, 2013, the Developer entered into a prime construction contract  (the "Construction Contract") with TPBC, as general contractor for the Project.  The Construction Contract provided for the demolition and abatement of portions of the existing structures of the bus station to allow the building's reconstruction and remodeling into a different configuration.  TPBC also conducted the build-out of the retail space for a department store tenant, Marshalls, but not for the other retail spaces.  TPBC commenced construction work in the fall of 2013.  The bus operations continued during the renovation.  The Project opened to the public in May 2017.

32.    Based on information and belief, the Project is not complete at this time.  On June 21, 2019, the Developer, through its principal manager, Stephen J. Garchik, prepared and signed an affidavit filed in federal court indicating that the Project is not yet complete. (See USDC-SDNY Action, 1:19-cv-05344-RA, Docket No. 22, paragraphs 10 and 13). On November 25, 2019, the Developer filed a pleading with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (Case No. 19-13196 (SCC); Developer's *Reply to Tutor Perini Building Corp.'s Objection to the Motion to Approve Bidding Procedures*; Bankruptcy Docket No. 87, paragraph 8) in which it stated, "Because all Final Punch List Items have not been completed, the Port Authority has not made the Final Payment."  Exhibit A to that same pleading contains a settlement agreement between the Developer and the Port Authority which states, "the Project will be complete upon completion of the New Egress."  Based on the foregoing admissions by the Developer, as of at least November 25, 2019, work on the Project is

continuing. In addition, TPBC, through its lower-tier subcontractor, Siemens, continued to conduct certain services under through the Construction Project into the 2020 calendar year.

33.    Based on information and belief, the Developer's sole source of revenue is the collection of rental payments under the Ground Lease, and the Developer's sole asset is the leasehold under the Ground Lease.

**B.    The Lien Law Trust Funds Received to Fund the Project**

34.    The Port Authority provided certain funding for the Project, including funding specifically for the Reserved Spaces for the Port Authority's bus operations (the "Contractor Trust Funds").

35.    However, the Developer needed and agreed to provide additional funding for the Leased Areas.  The Developer secured funding from a variety of sources, including, without limitation, the following:

- a loan secured by a mortgage against the Developer's leasehold estate on the Property and an assignment of leases and rents in connection with the Developer's leasehold estate on the Property, in an amount not less than $72 million from Defendant George Washington Bridge Bus Station and Infrastructure Development Fund, LLC;

- a building loan secured by a building loan mortgage against the Developer's leasehold estate on the Property in an amount up to $19.065 million from Defendants GSNMF Sub-CDE 12 LLC, GSB NMTC Investor LLC, LIIF Sub-CDE XXVI, LLC, DVCI CDE XIII, LLC, GWB NMTC Investment Fund LLC, and George Washington Bridge Bus Station and Infrastructure Development Fund, Phase II, LLC;

- a loan secured by a mortgage against the Developer's leasehold estate on the Property in an amount up to $9 million from Defendant GWB Leverage Lender, LLC; and

- a loan secured by a mortgage against the Developer's leasehold estate on the Property in an amount up to $5 million from Defendant Upper Manhattan Empowerment Zone Development Corporation.

The foregoing are referred to herein as the "Owner Trust Funds."

36.    Defendants George Washington Bridge Bus Station and Infrastructure Development Fund, LLC; GSNMF Sub-CDE 12 LLC; GSB NMTC Investor LLC; LIIF Sub-CDE XXVI, LLC; DVCI CDE XIII, LLC; GWB NMTC Investment Fund LLC; George Washington Bridge Bus Station and Infrastructure Development Fund, Phase II, LLC; GWB Leverage Lender, LLC; and Upper Manhattan Empowerment Zone Development Corporation collectively are referred to in the Second Cause of Action as the "Lender Defendants."

37.    The advances by the Defendants were subordinated to the claims of other creditors.  Section 14A.10 of the Ground Lease provides that:

> Subordination.    Notwithstanding anything contained in any Mortgage or in this Article 14A, it is understood and agreed that the rights of the holder of any Mortgage, including a Recognized Mortgagee, shall be subject and subordinate to [the Ground Lease]. The terms, covenants, conditions and provisions of [the Ground Lease] shall govern as between the Port Authority, the [Developer] and any Recognized Mortgagee, and in the event of any inconsistency between the terms, covenants, conditions and provisions of [the Ground Lease] and the terms, covenants, conditions and provisions of any Mortgage, the terms, covenants, conditions, and provisions of [the Ground Lease] shall control. … Any Mortgage granted hereunder shall make reference to the provisions of [the Ground Lease] and shall provide that the Mortgage and the rights of the Recognized Mortgagee thereunder are and shall be in all respects subject to all provisions of [the Ground Lease].

38.    Under section 14A.10 of the Ground Lease, the claims of any contractor, subcontractor, material-men and workmen retained on the Project would be senior to any purported mortgage, not least because section 5.7(c) of the Ground Lease expressly provides for the payment of such parties.

39.    Section 5.7(c) provides, in relevant part, that:

> [p]rovided that the Port Authority shall pay the amounts due and owing under Section 5.4 hereof, the [Developer] shall pay all claims lawfully made against it by its contractors, subcontractors, material-men and workmen and all claims lawfully made against it by other third persons arising out of or in connection with or because of the performance of the Construction Work and shall cause its contractors and subcontractors to pay all such claims lawfully made against them.

40.    Nevertheless, the Developer's general ledger produced in Developer's Chapter 11 Bankruptcy case (described herein) indicates the Developer made, and in many instances made at the direction of the Individual Owners, substantial payments from the Developer's Owner Trust Funds and the Contractor Trust Funds to the Individual Owners, the Related Developer Entities, and the other Defendants—totaling  millions of dollars that were not for valid purposes under the Lien Law.

**C.**    **The Developer Received Trust Funds and other Funds for the Purpose of Paying Costs of Improvements but Defendants Slayton Ventures, LLC, Slayton Equities, SJM Partners Inc, Paul Slayton, Stephen Garchik, William "Trey" Burke and Stephen McBride, Does 1-100, Diverted those Trust Funds to Themselves and Others**

41.    Each month, following the completion of scheduled work, TPBC would issue the Developer a payment application seeking compensation for costs and labor expended on the Project that month.  In accordance with industry practice, this initial payment application was dubbed a "pencil copy," because it was subject to review and revision by both the Developer and the Port Authority.  Indeed, the Developer would frequently make changes and negotiate payment application figures with TPBC, and then submit its own version dubbed the "final copy."

42.    The final copy, as agreed upon by all parties, was signed and notarized by TPBC and formally submitted to the Developer.  The Developer was supposed to set aside Owner Trust Funds and the Contractor Trust Funds specifically for the purpose of paying TPBC and others for their construction work.

43.    As to TPBC, the Developer made progress payments in connection with payment applications Nos. 1 through 29.  However, despite issuing final copies for payment applications Nos. 30 through 44, the Developer failed to make payments thereon.  These payment applications alone, Nos 30-44, plus the project retention fund, exceed $29 million. Instead, as described above, at the same time the Developer stopped paying TPBC, the Developer made substantial payments to the Defendants out of the Owner Trust Funds and the Contractor Trust Funds.

D.    **The Arbitration Proceeding**

44.    Due to claims submitted by TPBC and its subcontractors concerning, among other things, delays, design changes and extra work costs incurred in construction of the Project, and the Developer's failure to pay TPBC its contract balance for completion of the Project including 16 monthly payments due under payment applications Nos. 30 through 44, the matter was submitted to the dispute resolution provisions of the Construction Contract.

45.    On February 26, 2015, the Developer initiated the Arbitration Proceeding by filing a demand for arbitration with the American Arbitration Association, pursuant to their Construction Industry Rules.[1]  The demand sought declaratory relief and a determination of the pending claims submitted by the contractors on the Project.   TPBC filed an answer and counterclaim, as amended, seeking damages against the Developer, on behalf of itself and its subcontractors.

46.    The parties selected an arbitration panel comprising three senior construction attorneys, Dennis Cavanaugh, Gregory Beckwith, and John Fieldsteel (the "Panel"), which was appointed on March 31, 2016.

47.    Following extensive discovery, the parties submitted amended pleadings on March 30, 2018, wherein TPBC alleged a claim of $120 million, with the Developer seeking $3.8 million.

48.    In March and July 2018, the parties submitted extensive expert reports and rebuttal reports on the merits and damages sought by the parties. The parties exchanged documents and discovery, and commenced hearings on August 22, 2018, with a site visit by the Panel.  Testimony on the merits of the claims began in the Arbitration Proceedings on September

---

[1] The Arbitration Proceeding is styled as *George Washington Bridge Bus Station Development Venture, LLC v. Tutor Perini Building Corp.*, American Arbitration Association, Case No. 01-15-0002-7887.

24, 2018. TPBC put on its case-in-chief first. By the time that the Developer commenced its Chapter 11 Case, the Panel had conducted 67 days of evidentiary hearing on the merits regarding Project delays, change orders, and the unpaid contract balance claim. The last hearing on the merits took place on April 12, 2019, with two additional in-person hearings on issuance and enforcement of TPBC's attachment motion on May 22, 2019, and September 6, 2019.

49.     TPBC concluded the presentation of its affirmative claims on April 10, 2019, proving its amended claims for $113 million by the requisite standard. TPBC's claims were supported by expert and fact witness testimony and voluminous documentary evidence.

50.     The Arbitration Proceeding was interrupted when, on April 15, 2019, all of the lawyers of record for the Developer, at two different law firms, withdrew from the case. It was later learned that the Developer had not paid the lawyers for over four months. However, once the Developer hired new legal counsel, the parties were able to schedule further hearing dates with the Panel. This resulted in the vacating of hearing dates scheduled from May to early November 2019, with the hearings scheduled to commence again on November 18, 2019. On October 7, 2019, the Developer filed its chapter 11 petition, staying the Arbitration Proceeding and forcing the parties to vacate all scheduled hearing dates.

51.     TPBC's damages proven in the arbitration total $113,251,238 (plus millions of dollars of interest and arbitration costs) and is summarized in the chart below.

| Type | Damages |
|---|---|
| Steel and Chipping Work Claim – Direct Cost Proposed Change Inquiry ("PCI") Claims | $4,552,838 |
| Steel and Chipping Work Claim – Impact Claim | $8,700,923 |
| Time Impact Analysis and Request for Time Extension #1, #2 with General Condition and Impact Damages ($23,642,744 in Extended Time-Related Costs, $14,867,554 in Cumulative Impacts, $2,472,508 in Premium Time PCI Claim, and $801,429 Additional Direct Costs PCI related to Delay) | $41,784,235 |
| PCI Damages – Direct Cost Claims on Individual PCIs (Non-Steel) | $10,071,231 |
| TPBC's Claim for the Delay/Impact to Subcontractor WDF Inc. | $6,512,692 |
| TPBC's Claim for the Delay/Impact to Subcontractor Five Star Electric Corp. | $10,572,295 |
| TPBC's Claim for the Delay/Impact to Subcontractor Associated Specialty Contracting, Inc. | $783,492 |
| Contract Balance, Payment Applications 30-45 and Retention | $29,131,950 |
| Subtotal | **$112,109,656** |
| Settlement of All Non-Steel PCIs under $20,000 before Hearing | $914,224 |
| Settlement of Various PCIs during Hearings | $227,358 |
| GRAND TOTAL | **$113,251,238** |

**E.**     ***Application for Equitable Relief***

52.     Prior to the commencement of the hearings on the merits in the Arbitration Proceeding, on June 29, 2018, TPBC filed an application for an order of attachment and a preliminary injunction with the Panel (the "Application") to (1) freeze the $29,131,856.16 approved under payment applications Nos. 30 through 44 and allocated to compensate TPBC for work performed in connection with the Project and (2) place the funds in an escrow account monitored by an independent third-party, thereby enjoining the Developer from withdrawing, spending, transferring, dissipating, assigning, encumbering, disposing of, or otherwise using those funds.

53.     The Application was based in part on then-recently discovered evidence stating that Developer, the Related Developer Entities and certain Individual Owners were contemplating filing for bankruptcy to avoid paying the Developer's debt to TPBC.

54.     Based on the representations of the Developer and the Individual Owners, who were the representatives of the Developer in the Arbitration Proceeding, including their counsel of record in the Arbitration, both verbally and through certain filings, that the Developer was holding the funds to pay TPBC for its claims should TPBC prevail in the Arbitration Proceeding, and therefore there was no basis for an injunction or attachment. The Panel declined the injunction, but ruled that the Application for the attachment could be renewed at a later time.

55.     On February 15, 2019, TPBC presented in the Arbitration the contract balance claim which established the unpaid balance of $29,131,856.16.  The claim was not contested on the merits or calculation of the claim. The parties stipulated to a demonstrative chart setting for the contract balance dates, payments and calculation.

56.     TPBC concluded the presentation of its affirmative claims on April 10, 2019 and rested its case.  The Developer began its defensive case on April 11, 2019, and presented a witness on Thursday and Friday, April 11 and 12, 2019.

57.     In a sudden and unexpected development, on Monday, April 15, 2019, all of the lawyers of record for Developer, at two different law firms, simultaneously withdrew from their representation of the Developer in the Arbitration Proceedings.

58.     Shortly thereafter, TPBC renewed the Application for the attachment.  The renewal was based on three premises: (1) that TPBC had rested its case, proved its damages, including showing a likelihood of success in receiving an award on the contract balance portion of the claim; (2) the financial insolvency of the Developer demonstrated by the withdraw of its

attorneys; and (3) the extension of time sought by the Developer in the proceedings. The Developer retained attorneys to represent it during the renewal proceedings.  The Arbitration Panel conducted a proceeding on the renewal, including the Developer filing papers, through its attorneys retained for such purposes, and conducting a hearing on May 22, 2019.

59.    On June 4, 2019, the Panel issued an order granting the Application to the extent of issuing an Order of Attachment of Twenty-Three Million dollars ($23,000,000.00).

60.    On July 15, 2019, the Panel's attachment order was confirmed by the U.S. District Court for the Southern District of New York ("SDNY") (See USDC-SDNY Action, 1:19-cv-05344-RA) and judgment thereon was entered on July 22, 2019.

**F.    Developer's Failure to Comply with Attachment Order and Subsequent Disclosures and Continued Diversion of Trust Funds**

61.    Despite the confirmation of the Panel's order, the Developer and the Individual Owners refused to comply therewith.

62.    On June 20, 2019, TPBC filed a sanctions motion with the Panel seeking relief from Developer's failure to comply, including the failure to disclose the location of project funds, the continuing disbursement of project funds and the failure to permit the attachment. TPBC also submitted post-judgment discovery through its confirmation lawsuit with SDNY to obtain information relating to the location of the funds to enforce the attachment order.

63.    Developer responded to both the sanctions motion and the post-judgment discovery with an Affidavit by Defendant Stephen Garchik, indicating that Developer was not in possession of the $23 million TPBC sought to attach.  Defendant Stephen Garchik affirmed that Developer "has very limited cash on hand."

64.     The Panel scheduled a hearing for September 6, 2019, pertaining, *inter alia*, to Developer's failure to disclose the location of the funds to be attached and its inquiry was limited to funds in Developer's possession from the date of entry of the attachment order.

65.     During that September 6, 2019 hearing, Developer refused to provide principals of the Developer as ordered by the Panel, but instead produced witness Stephen Winiarski, a bookkeeper hired as a project accountant by the Developer specifically for this Project, to testify regarding the Developer's financial status as of the entry of the order.  Winiarski is not an employee of the Developer, but rather an employee of his own corporation, Envirocon Financial, Inc.  The Developer was represented by Counsel during these proceedings.

66.     Mr. Winiarski testified that Developer had not received the Owner Trust Funds since late March or early April 2017 to his knowledge, and no such funds were in Developer's primary bank account on June 4, 2019 – the date the Panel entered its attachment order.  This was in direct contradiction to prior statements made on behalf of the Developer by its attorneys during the original attachment proceedings.

67.     Upon information and belief, Developer and the Individual Owners were effectively in possession and control of those funds and prioritized the Developer's obligation to a favored lender in direct violation of the Panel's attachment order as confirmed by the SDNY.

68.     Upon information and belief, there were also payments, authorized and directed by one or all of the Individual Owners, that Winiarski made, that were Lien Law trust funds to those outside of the construction work, including to the project principals.  Mr. Winiarski testified he was aware of the order, but violated it at the direction of Paul Slayton and/or Stephen Garchik.

69.     Upon information and belief, the Individual Owners among others, effectively used Lien Law trust funds to pay themselves and the Related Developer Entities while there were outstanding claims by TPBC for work performed.

## G.    The Chapter 11 Case

70.     On the October 7, 2019 Petition Date, the Developer commenced a Chapter 11 Case in the United States Bankruptcy Court for the Southern District of New York by filing a petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, Case No. 19-13196-scc.  Upon the filing of the Chapter 11 Case, the automatic stay under 11 U.S.C. § 362 stayed the Arbitration Proceeding.

71.     On October 30, 2019, the Bankruptcy Court entered a final order approving the Developer's debtor-in-possession financing (the "Final DIP Order").[2]  The Final DIP Order contains broad stipulations, admissions, releases, and agreements by the Developer regarding the validity, priority, and perfection of the Defendants' asserted secured claims, including, *inter alia*, in paragraphs 5 and 6 of the Final DIP Order (collectively, the "Stipulations").  *See* Final DIP Order ¶¶ 5-6, 23.  In addition to any challenge regarding the validity, priority, and perfection of the Defendants' asserted secured claims, the Stipulations expressly include prohibitions on avoidance, recharacterization, subordination, recovery, or attack under the Bankruptcy Code or applicable non-bankruptcy law.  *See*, *e.g.*, Final DIP Order ¶ 5(b).  The Final DIP Order provides that the Developer's Stipulations will be binding on all parties in interest absent a timely-filed challenge proceeding.  *See* Final DIP Order ¶ 23.  Accordingly, TPBC files this Complaint at this time to avoid any contention that valid claims against the Defendants are precluded under the terms of the Final DIP Order.

---

[2] A true and correct copy of the Final DIP Order can be found at can be found in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (Case No. 19-13196 (SCC), Docket, No. 62, dated October 30, 2019.

# V.
# CAUSES OF ACTION

## COUNT I

## WRONGFUL DIVERSION OF MONIES FROM TRUST FUND

### (Article 3-A N.Y. Lien Law ( § 70, et seq.))

**(Against All Defendants, including New York City Regional Center, LLC; George Washington Bridge Bus Station And Infrastructure Development Fund, LLC; GSNMF Sub-Cde 12 LLC; GSB NMTC Investor LLC: LIIF SUB-CDE XXVI, LLC; DVCI CDE XIII, LLC; GWB NMTC Investment Fund LLC; GWB Leverage Lender, LLC; George Washington Bridge Bus Station And Infrastructure Development Fund, Phase II, LLC; Defendant Upper Manhattan Empowerment Zone Development Corporation; Slayton Ventures, LLC; Slayton Equities, New York; SJM Partners Inc.; Paul Slayton, an Individual; Stephen Garchik, an individual; William "Trey" Burke, an individual; Stephen McBride, an individual; and Does 1-300, inclusive)**

72.     The Plaintiff restates and realleges the foregoing paragraphs, which are incorporated by reference as if set forth fully herein.

73.     The Developer is a "contractor" under the New York State Lien Law § 2(9) as it entered into the Lease with the Port Authority for the improvement of the Property for the Port Authority's benefit.

74.     The Developer is also an "owner" under Lien Law § 2(3) as it is defined as a lessee under the Lease.

75.     Article 3-A of the Lien Law imposes a duty on the Developer to hold funds Developer received for or in connection with an improvement of real property in trust for the payment of the cost of improvement, including payment of claims of, *inter alia*, contractors and subcontractors.

76.     The Developer received Contractor Trust Funds and Owner Trust Funds in part to compensate Plaintiff for construction work performed to improve the Property and the Project.

Monies were supposed to be set aside explicitly for this purpose, and the Developer even approved the payment applications by issuing final copies thereof.

77.     However, the Developer failed to make payments thereon.  Instead, the Developer made substantial payments to the Defendants and others, thus depleting the monies set aside to compensate Plaintiff.  These were not payments made for any purpose defined in Lien Law § 71.

78.     Accordingly, the Developer depleted the trust money before paying or discharging all of the trust claims.  The Defendants were aware of the fact that substantial contractor claims were going unpaid.

79.     Upon receipt of the Lien Law trust funds, Defendants became statutory trustees under Article 3-A of the Lien Law by operation of law.

80.     Plaintiff and the other trust fund beneficiaries furnished labor, materials and equipment which were used in and for the improvement of the Project, and were furnished for and were applied in the construction of the Project.

81.     Defendants were aware that the Project depended upon substantial construction work performed by a host of contractors and subcontractors.  The Defendants' purported collateral included such construction contracts.  The Defendants have a sophisticated and long-standing funding relationship with the Developer.

82.     Defendants Does 100-300, which may include EB-5 investors, used the Defendants New York City Regional Center, LLC, George Washington Bridge Bus Station and Infrastructure Development Fund, LLC, George Washington Bridge Bus Station and Infrastructure Development Fund, Phase II, LLC and certain of their affiliates as their agents to make the EB-5 contributions to the Developer and to otherwise administer their investments in the Developer and the Project.  Defendants Does 100-300 are therefore properly imputed with all

of the Defendant New York City Regional Center, LLC's, George Washington Bridge Bus Station and Infrastructure Development Fund, LLC, George Washington Bridge Bus Station and Infrastructure Development Fund, Phase II, LLC, and their affiliates' actual or constructive knowledge regarding the transfers.  Upon information and belief, substantial portions of the funds transferred by the Developer to Defendant New York City Regional Center, LLC, George Washington Bridge Bus Station and Infrastructure Development Fund, LLC, George Washington Bridge Bus Station and Infrastructure Development Fund, Phase II, LLC and their affiliates were, in turn, transferred by Defendant New York City Regional Center, LLC, George Washington Bridge Bus Station and Infrastructure Development Fund, LLC, George Washington Bridge Bus Station and Infrastructure Development Fund, Phase II, LLC and their affiliates to the EB-5 investors.

83.    Plaintiff asserts this cause of action on its own behalf and on behalf of all beneficiaries of the trust funds created in connection with the Project.

84.    Upon information and belief, Defendants received trust assets and/or diverted trust assets in violation of Article 3-A of the Lien Law.

85.    One year has not elapsed since the completion of the Project within the meaning of Article 3-A of the Lien Law.

86.    The Court should determine and adjudge that the Developer wrongfully diverted monies from a statutory trust formed pursuant to Article 3-A of the Lien Law, and order the return of such funds from Defendants for the purpose of compensating the beneficiaries of such statutory trust. funds from Defendants for the purpose of compensating the beneficiaries of such statutory trust.

## COUNT II

## DECLARATORY JUDGMENT

### (Declaratory Judgment Act)

**(Against the Lender Defendants, including New York City Regional Center, LLC; George Washington Bridge Bus Station And Infrastructure Development Fund, LLC; GSNMF Sub-Cde 12 LLC; GSB NMTC Investor LLC: LIIF SUB-CDE XXVI, LLC; DVCI CDE XIII, LLC; GWB NMTC Investment Fund LLC; GWB Leverage Lender, LLC; George Washington Bridge Bus Station And Infrastructure Development Fund, Phase II, LLC; Defendant Upper Manhattan Empowerment Zone Development Corporation; and Does 1-300, inclusive)**

87.     The Plaintiff restates and realleges the foregoing paragraphs, which are incorporated by reference as if set forth fully herein.

88.     The Ground Lease was entered into by the Developer and the Port Authority.  The Ground Lease remains in effect as a valid and binding contract for, *inter alia*, the lease of the Project by the Port Authority to the Developer.

89.     The provisions of the Ground Lease relating to, *inter alia*, the payment of the contractors and subcontractors on the Project were entered into to benefit such parties.  For example, section 5.7(c) of the Ground Lease specifically provides for the direct performance— *i.e.*, payment—by the Developer to TPBC (and the other contractors and subcontractors) of amounts required to be paid under the Construction Contract.  Other circumstances surrounding the execution of the Ground Lease and the retention of TPBC as general contractor for the Project pursuant to the Construction Contract demonstrate that TPBC was an intended beneficiary of the Ground Lease, including the fact that the Port Authority and the Developer knew that TPBC was the general contractor for the Project.  The Port Authority has even

acknowledged that TPBC is a beneficiary of the terms of the Ground Lease.  *See* Port Authority Reply ¶ 68[3].

90.    TPBC (and the other contractors and subcontractors) were to receive immediate and ongoing benefit from the applicable provisions of the Ground Lease.  For example, section 5.7(c) of the Ground Lease provides for the timely payment of TPBC, and under the Construction Contract, TPBC was entitled to regular construction payments from the Developer.

91.    Because TPBC is an intended third-party beneficiary of the Ground Lease, TPBC is entitled to the benefits of section 14A.10 of the Ground Lease, which subordinates the liens and claims of the Lenders to the liens and claims held by the Port Authority and TPBC.  Due to such subordination, TPBC should be paid out of the proceeds of any disposition of the Ground Lease before the Lender Defendants receive any such proceeds.

## COUNT III

## COMMON LAW CONVERSION

**(Against the Individual Owners and Related Owner Entities, including Slayton Ventures, LLC; Slayton Equities, New York; SJM Partners Inc.; Paul Slayton, an Individual; Stephen Garchik, an individual; William "Trey" Burke, an individual; Stephen McBride, an individual; and Does 1-300, inclusive)**

92.    Plaintiff restates and realleges the foregoing paragraphs, which are incorporated by reference as if set forth fully herein.

---

[3] A true and correct copy of the Response of the Port Authority to (I) Debtor's Opposition to Tutor Perini Building Corp.'s Motion for an Order Granting (A) Relief from the Automatic Stay with Respect to the Tutor Perini Arbitration and (B) Related Relief; and (II) Objection and Joinder of New York City Regional Center, LLC to Debtor's Opposition to Tutor Perini Building Corp.'s Motion for an Order Granting (A) Relief from the Automatic Stay with Respect to the Tutor Perini Arbitration and (B) Related Relief can be found at can be found in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (Case No. 19-13196 (SCC), Docket, No. 135, dated January 16, 2020.

93.     The Individual Owners and Related Developer Entities had control over the Owner Trust Funds and Contractor Trust Funds in the possession of the Developer.

94.     Upon information and belief, at all times hereinafter mentioned, the Individual Owners and Related Developer Entities have stolen, absconded and  improperly taken the aforesaid Owner Trust Funds and Contractor Trust Funds, which were the property of Plaintiff, and converted same for their own benefit, use and control.

95.     As the direct and proximate result of the Individual Owners' and Related Developer Entities conversion of the Owner Trust Funds and Contractor Trust Funds, Plaintiff has suffered general, consequential and special damages, and interest thereon.

96.     The acts of the Individual Owners and Related Developer Entities were performed intentionally and/or with reckless disregard of Plaintiff's property and/or legal rights, as demonstrated by the Panel's finding that the transfers to the Individual Owners and Related Developer Entities were made in willful disregard of the Panel's Order of Attachment.

97.     By reason of the above, the Individual Owners and Related Developer Entities are jointly and severally liable to Plaintiffs in an amount to be determined at trial.

98.     By reason of the above, the Individual Owners and Related Developer Entities are jointly and severally liable to Plaintiff for to punitive damages in an amount to be determined at trial.

# COUNT IV

# CONSTRUCTIVE FRAUD

**(Against the Individual Owners and Related Owner Entities, including Slayton Ventures, LLC; Slayton Equities, New York; SJM Partners Inc.; Paul Slayton, an Individual; Stephen Garchik, an individual; William "Trey" Burke, an individual; Stephen McBride, an individual; and Does 1-300, inclusive))**

99.    Plaintiff restates and realleges the foregoing paragraphs, which are incorporated by reference as if set forth fully herein.

100.    As owners and officers of the Developer and the representatives of the Developer in the Arbitration Proceeding, the Individual Owners and Related Developer Entities were aware of TPBC's claims against the Developer for its work to improve the Property and the Project.

101.    In or around July or August 2018, prior to the commencement of the hearings on the merits for the Arbitration Proceeding, the Developer and the Individual Owners and Related Developer Entities, who were the representatives of the Developer in the Arbitration Proceeding, including through attorneys, both verbally and through written disclosure from Developer's counsel represented to TPBC and the Panel that the Developer was holding the funds to pay TPBC for its claims should TPBC prevail in the Arbitration Proceeding.  As a result of this representation, the Panel declined to rule on the Application at that time.

102.    The Individual Owners and Related Developer Entities were aware of the disclosure by Developer's counsel in the Arbitration Proceeding and made no efforts to correct the disclosure.

103.    TPBC reasonably relied upon the representation of Developer's counsel, given that Developer's counsel was representing Developer in the Arbitration Proceeding and the

Individual Owners and Related Developer Entities were involved in the Arbitration Proceeding, but did nothing to contradict the representation by Developer's counsel.

104.    As owners and officers of the Developer and the representatives of the Developer in the Arbitration Proceeding, the Individual Owners and Related Developer Entities were also aware of the Order of Attachment issued by the Panel freezing $23,000,000 from the amounts the Developer and the Individual Owners and Related Developer Entities previously represented was being held by the Developer to satisfy TPBC's claims in the Arbitration Proceeding.

105.    As evidenced by the testimony of Stephen Winiarski on September 6, 2019 in the Arbitration Proceeding, the Individual Owners and Related Developer Entities were effectively in possession and control of the Owner Trust Funds and the Contractor Trust Funds and authorized and directed payments of those trust funds to themselves and the other Defendants during the Arbitration Proceeding and after the Order of Attachment had been issued, despite the Individual Owners' knowledge of TPBC's claims, the Developer's and the Individual Owners and Related Developer Entities' representations to TPBC and the Panel and the directions set forth in the Order of Attachment.

106.    As owners and officers of the Developer, the Individual Owners are trustees of the Owner Trust Funds and the Contractor Trust Funds.

107.    Additionally, as transferees of the Contractor Trust Funds and the Owner Trust Funds, the Individual Owners are trustees of those funds under the Lien Law.

108.    As a statutory trustees, the Individual Owners and Related Developer Entities were obligated to act as fiduciary manager of the Owner Trust Funds and Contractor Trust Funds.  Individual Owners therefore owed TPBC, one of the beneficiaries of the Owners Trust

Funds and the Contractor Trust Funds, a duty of loyalty and was required to administer the trust solely in the interest of the beneficiaries.

109.    By authorizing and directing these transfers to themselves and the other Defendants, the Individual Owners and Related Developer Entities deprived TPBC of its share of the Owner Trust Funds and the Contractor Trust Funds, and breached the fiduciary duty owed by the Individual Owners to TPBC.

110.    In addition to the violation under the Lien Law, the Individual Owners and Related Developer Entities in having transferred project funds belonging to TPBC to themselves and others had a statutory and common law fiduciary duty over those funds, which the Individual Owners and Related Developer Entities violating by wasting, disposing, transferring and other misappropriating the money of TPBC.

111.    As the direct and proximate result of the Individual Owner's constructive fraud accomplished by the acts described, TPBC has suffered general, consequential and special damages in an amount to be determined at trial.

112.    The acts of the Individual Owners described herein were performed intentionally and/or with willful disregard of TPBC's property and/or legal rights, such that each of the Individual Owners are guilty of oppression, fraud, or malice, and TPBC is entitled to recover exemplary or punitive damages from the Individual Owners for the sake of example and by way of punishment.

113.    In addition, TPBC is entitled by law to recover its costs of suit herein and to obtain such other and further relief as the Court may order.

## V.
## DEMAND FOR TRIAL BY JURY

114.    TPBC hereby demands trial by jury of all issues so triable.

# VI.
## PRAYER FOR RELIEF

**WHEREFORE**, by reason of the foregoing, TPBC requests that judgment be entered against the Defendant as follows:

A.    On Count I, entering a judgment against the Defendants named therein (a) finding that these Defendants diverted and/or received monies in the amount in excess $29 million from a statutory trust formed pursuant to Article 3A of the N.Y. Lien Law, and (b) ordering the return of such funds from Defendants for the purpose of compensating the beneficiaries of the statutory fund.

B.    On Count II, entering a judgment against Defendants named therein finding that (a) TPBC is a third-party beneficiary of the Ground Lease and, as such, entitled to enforce its terms and (b) as such, TPBC is entitled to the benefit of section 14A.10 of the Ground Lease and therefore should be paid out of the proceeds of any disposition of the Ground Lease before the Lenders receive any such proceeds.

C.    On Count III, entering a judgment in favor of TPBC against Defendants named therein for their conversion of funds in an amount to be determined at trial.

D.    On Count IV, entering a judgment in favor of TPBC against Defendants named therein for their constructive fraud in an amount to be determined at trial.

E.    On all Counts, entering a judgment in favor of TPBC against Defendants for interest on the amount of judgment.

F.    On all Counts, entering a judgment in favor of TPBC against Defendants for costs of this suit.

31

G.     On all Counts, entering a judgment in favor of TPBC against Defendants for attorney fees to the extent permitted by law or contract.

H.     On all Counts, for other judgment that the Court finds just.

Respectfully submitted,

DATED:     March 24, 2020

/s/ Emily D. Anderson


**NIDA & ROMYN, P.C.**
Robert Nida
1900 Avenue of the Stars, Suite 650
Los Angeles, CA  90067
Telephone:  (310) 286-3400
E-Mail:  rnida@nidaromyn.com

**PEPPER HAMILTON LLP**
Ira M. Schulman
Emily D. Anderson
620 Eighth Avenue, 37th Floor
New York, New York 10018-1405
E-Mail:  schulmai@pepperlaw.com
E-Mail:  andersoe@pepperlaw.com